IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TEXAS BLOCKCHAIN COUNCIL, A NONPROFIT ASSOCIATION; AND RIOT PLATFORMS, INC., *Plaintiffs,* <br><br> v. <br><br> DEPARTMENT OF ENERGY, JENNIFER M. GRANHOLM, IN HER OFFICIAL CAPACITY AS SECRETARY OF ENERGY;  ENERGY INFORMATION ADMINISTRATION, JOSEPH DECAROLIS, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF ENERGY INFORMATION ADMINISTRATION; OFFICE OF MANAGEMENT AND BUDGET,  SHALANDA YOUNG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF OFFICE OF MANAGEMENT AND BUDGET; *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § | W-24-CV-00099-ADA |

**ORDER GRANTING PLAINTIFFS' MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

**I.   Introduction**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 5). Plaintiff Texas Blockchain Council ("TBC") is a Texas non-profit 501(c)(6) trade association that advocates for the cryptocurrency industry in Texas. Plaintiff Riot Platforms, Inc., is a Nevada corporation with bitcoin mining operations in Rockdale, Texas. Plaintiffs bring this suit to enjoin enforcement of the Department of Energy ("DOE") and Energy Information Administration's ("EIA") recent emergency information collection survey—titled "EIA-862, Cryptocurrency

1

Mining Facilities Report" (hereinafter, the "Survey"). Plaintiffs also seek declaratory relief by asking this Court to find the administrative process followed by the Defendants in approving and implementing the Survey was unlawful. On the day the enforcement of the Survey was set to go into effect, Defendants filed declarations which ostensibly agreed to halt any enforcement of the Survey until March 25, 2024 and remove the Survey from the OMB website. ECF Nos. 10, 11. Those declarations, signed by EIA administrator Joeseph DeCarolis—state the following:

> "2. . . . In order to facilitate the Court's ability to hear from all parties in advance of issuing a decision on Plaintiffs' request for emergency relief, EIA has determined to exercise its discretion not to enforce any requirement to file the survey form EIA-862 through March 22, 2024. EIA commits not to seek or impose any fines, penalties, or other adverse consequences based on a failure to respond to the survey before March 25, 2024, the first business day after March 22, 2024.
> 3 EIA further agrees that it will sequester and not share any data received from any party responding to form EIA-862 before March 25, 2024."

ECF No. 10 at 1–2.

The Court held a hearing on this Motion on February 23, 2024. Counsel of record for both Defendants and Plaintiffs were present. After representations from Defendants' counsel during the hearing, it appeared to the Court that the parties were prepared to agree to an order that memorialized the effect of the declaration, however, the Court has been informed that no such agreement could be reached. While the Court appreciates the EIA Administrator's willingness to allow the parties time to fully brief the issues presented before any enforcement occurs, the Court is not satisfied with a mere declaration. The declaration fails to bind all Defendants, does not remove the credible threat of enforcement from other defendants (or the EIA after March 25), and does not address Plaintiffs' alleged costs of compliance with the Survey. The Court is also

concerned that that the declaration lacks any enforcement mechanism in the event the EIA Administrator chooses not to honor the terms set forth in his declarations. s

## II.  **DISCUSSION**

The Court believes that the Temporary Restraining Order should be issued because Plaintiffs have met their burden under Federal Rule of Civil Procedure 65. Under Rule 65, the Court finds that Plaintiffs have shown through a verified complaint and supporting evidence that immediate and irreparable injury, loss, or damage will result if a TRO is not issued. Plaintiffs have also shown a likelihood of success on the merits on their claims under the Administrative Procedure Act, the Paperwork Reduction Act, and the Declaratory Judgment Act. *See* ECF No. 1 at ¶¶ 127–142. These statutory rights asserted by the Plaintiffs include the right to be free from collections of information beyond authorized by law. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012).

In light of the arguments presented by Defendants' counsel at the TRO hearing, the Court will first address Plaintiffs' alleged irreparable injury. Plaintiffs have alleged three main sources of irreparable injury: 1) nonrecoverable costs of compliance with the Survey, 2) a credible threat of prosecution if they do not comply with the Survey, and 3) the disclosure of proprietary information requested by the Survey, thus risking disclosure of sensitive business strategy. ECF No. 5 at 11–14. As discussed above, Defendants argued that the EIA Administrator's declaration neutralizes any credible threat of enforcement that Plaintiffs could fear. The Court disagrees. The declaration does not bind the other Defendants. The Court understands the declaration itself to show an intent on behalf of the EIA Administrator to enforce the Survey at the expiration of its promise—March 25. A credible threat of enforcement, albeit delayed, still exists. And while this TRO will expire before March 25, it seeks to preserve the status quo.

More importantly, this TRO addresses the Plaintiffs' other alleged injuries: costs of compliance. "[T]he nonrecoverable costs of complying with a putatively invalid [agency action] typically constitute irreparable harm." *Restaurant Law Center v. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023); *see also Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). The Defendants argued at the TRO hearing that any cost of compliance with the survey is *de minmus* given the EIA's estimated time for completion of the survey—30 minutes. That said, Defendants have sufficiently challenged that estimate in their verified complaint by stating their costs of compliance thus far has been over 40 hours. Upon inspection of the Survey itself, the Court finds the 30-minute estimated time of completion is extremely inaccurate, if not grossly misleading. *See* ECF No. 1-8 (EIA-862, Cryptocurrency Mining Facilities Report). The Court is satisfied that Plaintiffs have shown that, without a TRO, irreparable injury will result.

Plaintiffs also demonstrate that they are likely to succeed on the merits. The Survey was proposed and approved under an emergency provision of the PRA. That provision sensibly allows executive agencies, in emergent situations where time is of the essence, to bypass typical clearance procedures akin to notice-and-comment periods, and instead request information from the public on a much faster timeline. 44 U.S.C. § 3507(j)(1); 5 C.F.R. § 1320.13. The power to utilize that authority under these provisions is not unlimited. Such emergency requests are only appropriate upon an agency head's determination that public harm is reasonably likely to result if normal clearance procedures are followed. 5 C.F.R. § 1320.13(a). The Court believes that Plaintiffs are likely to succeed in showing that the facts alleged by Defendants to support an emergency request fall far short of justifying such an action. As a result, the determination likely violates the APA as "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). This finding alone is sufficient to satisfy this element of the TRO analysis.

Finally, the Court finds the balance of harms favors granting a TRO. "Once a court has concluded that [the movant's] harm is irreparable ... [the nonmovant] would need to present powerful evidence of harm to its interests to prevent [the movant] from meeting this requirement." *Texas Bankers Ass'n v. CFPB*, No. 7:23-CV-00144, 2023 WL 4872398, at *7 (S.D. Tex. July 31, 2023) (cleaned up). There is significant public interest in making sure administrative agencies abide by boundaries set forth in regulations and statutes. Further, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Texas v. Biden,* 10 F.4th 538, 560 (5th Cir. 2021) (per curiam) (quotation omitted); *see also Louisiana v. Biden*, 55 F.4th at 1035. The Court agrees with Plaintiffs that the balance of harms favors a restraining order. To quickly resolve the issues raised by Plaintiffs and give the Defendants an opportunity to respond, the Court **ORDERS** this case is set for a preliminary injunction hearing at 10:00 AM on Tuesday, February 27, 2024.

### III.   Conclusion

This Temporary Restraining Order maintains the pre-enforcement status quo of Defendants' Survey, EIA-862, until such time a preliminary injunction hearing can be held. With that said, the Court hereby **ORDERS** the following relief[1]:

The Defendants are:

1. restrained from requiring Plaintiffs or their members to respond to the Survey,

2. restrained from collecting data required by the Survey, and

3. shall sequester and not share any such data that Defendants have already received from Survey respondents.

---

[1] At the TRO hearing, the Court indicated that it would enter more strenuous relief, including a public notice by the Defendants concerning the restraint placed by this Court on Defendants' ability to solicit the information demanded by the Survey. However, the Court does not impose this requirement at this stage, because Plaintiffs did not seek such relief. Instead, the Court's relief simply mirrors that requested by Plaintiffs in their Motion.

4. Plaintiffs shall not be required to give security under Fed. R. Civ. P. 65(c). *See City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981).

This order shall be promptly filed in the clerk's office and entered in the record. It shall expire 14 days from the date of entry—unless before that time the Court, for good cause, extends it for a like period, or Defendants consent to a longer extension.

**IT IS SO ORDERED** this 23rd day of February, 2024.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE