**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| TEXAS BLOCKCHAIN COUNCIL, a nonprofit association; RIOT PLATFORMS, et al, <br><br> *Plaintiffs,* <br><br> v. <br><br> DEPARTMENT OF ENERGY, JENNIFER M. GRANHOLM in her official capacity as Secretary of Energy; ENERGY INFORMATION ADMINISTRATION; JOSEPH DECAROLIS, in his official capacity as Administrator of Energy Information Administration; OFFICE OF MANAGEMENT AND BUDGET; SHALANDA YOUNG, in her official capacity as Director of Office of Management and Budget <br><br> *Defendants.* | Civil Action No. 6:24-cv-99 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE BY THE CHAMBER OF DIGITAL COMMERCE ON BEHALF OF ITS AFFECTED MEMBER PARTIES**

**INTRODUCTION**

1.     The Court is guided primarily by practical and equitable considerations when faced

with determining whether intervention is appropriate. *See United States ex. rel. McGough v.*

1

4856-2670-6601.1

*Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). The rule for intervention is broadly construed in favor of intervenors. *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* at 397- 98 (citation omitted).

2.      Under Rule 24(b) (permissive intervention), courts may permit anyone to intervene when (1) the applicant's motion is timely; (2) there are independent grounds for jurisdiction; and (3) the applicant has a claim or defense that shares a common question of law or fact with the action. *Id.* at 403. "[C]ourts are guided primarily by practical and equitable considerations." *Id.* at 397 (quotation omitted).  The individual applicants move for mandatory intervention, or alternatively, for permissive intervention.

### A.  STANDING AS TRADE ASSOCIATION ON BEHALF OF IT'S MEMBERS

3.      The Chamber asserts standing in this matter through the vindication of its interests and the interests of its Members. Organizations or associations "are unable to establish standing solely on the basis of institutional interest in a legal issue." *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162 (3d Cir. 2007). Instead, an organization may assert standing (a) through direct injury to the organization or (b) as a representative of injured members of the organization. *Id.*  As the representative of the largest contingent of U.S. cryptocurrency Members, of which are subject to the harm created by the EIA's mandatory survey, the Chamber asserts standing as their representative.

4.      The U.S. Supreme Court has held that an association has standing to sue on behalf of its members if the following conditions are met:  (1) the association's members would otherwise have standing in their own right, (2) the interest the association is seeking to protect is germane to the association's purpose, and (3) neither the claim asserted, nor the relief requested, requires

participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).

5.      Each of the *Hunt* factors are easily met here. The Chamber's Members include cryptocurrency miners who (1) would otherwise have standing in their own right as they are mining companies who also received the data request at issue and allege that divulging this information would cause them irreparable and immediate harm. *See Decl.* at ¶2-4 (attesting that Chamber includes mining companies who have reporting obligations at issue). (2) As a trade association for the cryptocurrency sector for nearly 10 years, protecting the interest of the Chamber's Members is germane to the purpose of the Association. Defending proof-of-work cryptocurrency miners, Bitcoin mining companies in particular, has long been an interest of the Chamber. The Chamber has been an active participant in multiple policy and legal challenges in this arena in the past 10 years, even responding to previous requests for information by the Defendants related to the operations of cryptocurrency miners. (3) The claims at issue, or the relief requested, do not require direct participation from individual Members – among other reasons, because the existence of the survey letter and data request itself is acknowledged and not contested by any party, and their status as bitcoin mining companies is not disputed. The legal dispute centers around whether the government is abiding by its own rules – the adjudication of which does not require participation of any of the Chamber's Members directly.

## B.  THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION

6.      The Intervenor Plaintiff respectfully request that this Court grant permission to intervene in this suit pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. An applicant seeking permissive intervention must meet three threshold requirements: (1) it shares a common

question of law or fact with the main action; (2) its motion is timely; and (3) the court has an

independent basis for jurisdiction over the applicant's claims. *Northwest Forest Resource Council,*

82 F.3d at 839.  Permissive intervention is justified in this matter because there are independent

grounds for jurisdiction and the applicants share a common question of law or fact with this action.

*See United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in

granting intervention as of right, it might have granted permissive intervention under Rule 24(b)

because the intervenors raise common questions of law and fact."). The Chamber here satisfies

each factor.

### 1.  Common Question of Law or Fact with the Main Action

7.      The plaintiffs raise claims under the Paperwork Reduction Act ("PRA") and

Administrative Procedure Act ("APA"). Intervenor Plaintiff raises the exact same claims.

Intervenor Plaintiff Agrees to all aspects of the allegations of the complaint including its factual

and legal allegations. (*See* Dkt. #1.)

8.      Like Plaintiffs, Intervenor Plaintiff represents crypto mining companies. Like

Plaintiff, Intervenor Plaintiff's crypto mining companies received the same survey at issue in this

case in the same process.  Like Plaintiff, Intervenor Plaintiff alleges that this survey, by way of this

process, violates the PRA and APA in exactly the way so alleged in Plaintiff's Complaint.

9.      The PRA and its implementing regulations set forth a comprehensive scheme for

approving collections of information. 44 U.S.C. § 3507; 5 C.F.R. §§ 1320.9-13. Under that scheme,

proposed collections are grouped into one of three categories: (1) collections that are not contained

in proposed or current rules, 44 U.S.C. § 3507(c); 5 C.F.R. § 1320.10; (2) collections contained in

proposed rules, 44 U.S.C. § 3507(d); 5 C.F.R. § 1320.11; and (3) collections contained in existing

rules, 44 U.S.C. § 3507(h)(2); 5 C.F.R. § 1320.12. The survey launched by EIA is in the first category.

10.     The PRA also permits an accelerated or "emergency" process. 44 U.S.C. § 3507(j); 5 C.F.R. § 1320.13. Under emergency processing, an agency may request authorization of a collection of information if its head determines that:

(A) a collection of information–

(i) is needed prior to the expiration of time periods established under this subchapter; and
(ii) is essential to the mission of the agency; and

(B) the agency cannot reasonably comply with the provisions of this subchapter because

(i) public harm is reasonably likely to result if normal clearance procedures are followed;
(ii) an unanticipated event has occurred; or
(iii) the use of normal clearance procedures is reasonably likely to prevent or disrupt the collection of information or is reasonably likely to cause a statutory or court ordered deadline to be missed.

11.     Agencies shall not conduct information collections without proper authorization from OMB in compliance with the PRA. 44 U.S.C. § 3506(a)(1); 5 C.F.R. § 1320. As the PRA's administrator, OMB is likewise under a duty to ensure that the law is followed. 44 U.S.C. §§ 3503, 3504. As a result, Plaintiffs claim that Defendants have failed to meet these obligations and violated the PRA.

12.     The plaintiffs raise claims under the APA which establishes how federal administrative agencies make rules and adjudicate administrative litigation. 5 U.S.C. § 552.

13.     The plaintiffs provide that courts "shall" hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure

required by law. 5 U.S.C. § 706(2). Accordingly, the emergency request and approval of the Survey

under the APA should be held unlawful and set aside for the following reasons:

    a.  OMB acted arbitrarily or capriciously by approving EIA's emergency collection request, which did not meet the standards established under the PRA and its implementing regulations.

    b.  OMB abused its discretion by approving EIA's emergency collection request, which did not meet the standards established under the PRA and its implementing regulations.

    c.  Administrator DeCarolis and EIA acted in excess of statutory authority by seeking sensitive proprietary information that goes beyond the "energy consumption" information they are permitted to request under 15 U.S.C. § 772(b).

    d.  Administrator DeCarolis acted arbitrarily or capriciously by determining that the Survey information collection was "needed" before the time periods prescribed by the PRA and its implementing regulations, and that EIA could not comply with the standard clearance process because "public harm was reasonably likely" to occur.

    e.  Administrator DeCarolis abused his discretion by determining that the Survey information collection was "needed" before the time periods prescribed by the PRA and its implementing regulations, and that EIA could not comply with the standard clearance process because "public harm was reasonably likely" to occur.

    f.  Administrator DeCarolis acted contrary to law when he, or EIA at his direction, did not take steps to consult with members of the public before seeking emergency processing, 5 C.F.R. § 1320.13(d), and failed to provide the public notice required by 5 C.F.R. § 1320.13(d).

g.  OMB acted in excess of statutory authority when it approved a 189-day emergency authorization for the Survey pursuant to 44 U.S.C. § 3507(j)(2). Section 3508(j)(2) allows such collections for a maximum 180 days and the agency was without statutory authority to grant the collection for a period in excess of that.

h.  OMB acted contrary to law when it violated its own regulation, 5 C.F.R. § 1320.13(f), which limits its authority to grant an emergency collection to a maximum of 90 days and instead granted an emergency collection request for 189 days.

14.     Plaintiff-Intervenors claim the emergency authorization claimed by the EIA is woefully inadequate, lacking the substantive justification and procedural rigor demanded by its enabling statutes. The EIA has not demonstrated a compelling need for such sweeping data collection, nor has it provided a clear rationale for its expedited implementation, rendering the mandate both arbitrary and capricious. The Plaintiffs' complaint shares essentially identical questions of law and fact with the Intervenor and, as such, unquestionably satisfies the criteria for permissive intervention.

### 2.  This Motion is Timely

15.     The first factor for permissive intervention, timeliness of the application, is unquestionably met.  In considering the timeliness of the intervention, the Court should consider the totality of the circumstances. *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Fifth Circuit has noted that Rule 24's timeliness inquiry "is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

16.     Plaintiffs filed their complaint on February 22, 2024.  This Motion to Intervene is filed within two business days of the complaint. (*See* Dkt. #1.) Beyond the complaint, no other pleadings have been filed in this matter. As of the date of this filing, Defendants have not filed a

response.  This motion is "filed at a very early stage, before any hearings or rulings on substantive matters." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).  Aside from the emergency hearing on the Temporary Restraining Order held on February 23, 2024, this motion is filed before all other substantive hearings – including the scheduled hearing on February 28, 2024.

17.     Intervenor here has clearly acted with promptly, exceeding the timeliness requirement for intervention.  Intervenor even held Meet and Confer sessions with the government on February 22, 2024.

### 3.     The Court Has an Independent Basis for Jurisdiction Over the Applicant's Claims

18.     The State Movants have standing under Article III of the United States Constitution. To establish standing under Article III, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability. As described above, the Plaintiff-Intervenor – by way of its constituent members – have significant and concrete interests in this litigation, and these interests would be harmed if Defendants prevail, and the government is not enjoined.

19.     The Chamber's membership includes Members who do not belong to the Texas Blockchain Council. At least ten Members of the Chamber participate in proof-of-work cryptocurrency mining and are not represented by the Texas Blockchain Council. Additionally, at least four of the Chamber's Members have received notice mandating they respond to the EIA's survey and are not legally represented among the existing parties.  This number could grow as the Chamber's Members continue to receive the EIA's survey letter for various reasons. First, the letter was not sent through a certified delivery service. Instead, it was mailed through the United States Postal Service resulting in a delay leaving some Members with less than 10 business days to

respond with initial survey letters and follow-up reminder letters sent to different addresses. Second, in some cases, the letter was mailed to an incorrect address or recipient. Finally, in at least one instance, the letter was addressed to a Member but mailed to a facility that the Member has not owned for several years.

20.    As demonstrated in the attached Declaration, The Chamber includes Members that received the survey, and are thereby affected parties, with operations in Texas.  These include Members not already covered by Plaintiff. *See Ex. A* at ¶5.

## C.  INTERVENTION IS ALLOWED IN TRO AND PRELMINARY INJUNCTION CONTEXT

21.    Federal courts have often granted intervenors' motions to join temporary restraining orders and preliminary injunctions. *See E. Bay Sanctuary Covenant House v. Barr*, Case No. 19-cv-04073-JST, (N.D. Cal. Oct. 17, 2020); *see also Planned Parenthood et al. v. Daniel Cameron et al.*, Case No. 3:22-cv-198-RGJ (W.D. Ky. April 26, 2022) (granting Motion to Intervene for Injunctive Relief and considering Temporary Restraining Order, but considering it Moot on other grounds).

## D.  ADDITIONAL FACTORS FOR CONSIDERATION

22.    The Plaintiff-Intervenor asserts a right to intervene, premised on their status as being similarly situated to the original plaintiffs. This similarity extends to the nature and magnitude of the harms anticipated from the challenged actions of the U.S. Department of Energy, and the EIA. Specifically, the Plaintiff-Intervenor would endure harms identical to those articulated in the initial complaint, underscoring a direct and substantial interest in the outcome of the complaint. Moreover, the absence of an injunction against the Defendants' actions poses a significant risk of irreparable injury to the Plaintiff-Intervenor's interests.

23.     Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry.  No specific legal or equitable interest need be established." *S.W. Center for Bio. Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001) (quotation omitted).  An applicant demonstrates a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the Plaintiff's claims.  *Donnelly v. Glickman*, 159 F.3d 404, 409 (9th Cir. 2006); *citing Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996).  The interests of the individual applicants far exceed this minimum threshold inquiry.  "An applicant generally satisfies the relationship requirement only if the resolution to the Plaintiff's claims actually will affect the applicant."  *Donnelly,* 159 F.3d at 410.  *See Greene v. United States*, 996 F.2d 973, 976-78 (9th Cir. 1993) (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the Plaintiff's claims would not affect the 18 applicants directly). Here, the Chamber's Members will be directly affected by the disposition of this action.

24.     Should Defendants prevail, or Plaintiff's motion not otherwise be granted with broad relief for all similarly situated Members, Chamber's Members' rights will be directly impacted by the compelling speech the EIA is requiring. The Supreme Court has long recognized those very First Amendment implications of compelled speech.  *Board of Regents of University of Wisconsin v. Southworth,* 529 U.S. 217, 230 (2000).  Further, the Chamber's Member's Fifth Amendment Due Process Rights are also impacted because the cryptocurrency miners were not afforded adequate notice to respond to the survey request. Although the EIA released their desire to issue the survey request on January 31, 2024, many cryptocurrency miners either did not receive the survey at all or received it less than one week prior to the February 23, 2024, submission deadline.

25.     Here, there is a significant possibility that the Plaintiffs will not adequately represent the interests the individual applicants given the discrepancy in membership of the Texas Blockchain Council and the Chamber's representation of a large community of cryptocurrency miners impacted by the EIA's mandate.  The Chamber, by virtue of its representation of a significant portion of the U.S. cryptocurrency mining industry, possesses a direct and substantial interest in the outcome of this litigation.  Accordingly, intervention should be granted of right.

## E.   CONCLUSION

26.     The Court should grant the Plaintiff-Intervenor's Motion to Intervene permissively, and grant Plaintiff-Intervenor – and its constituent Members by implication – all the same rights and responsibilities as a party to the lawsuit.

27.     The Chamber's Members are required to abide by the Order by Friday, February 23, 2024. If this Motion is not granted, the Chamber's Members include companies not currently availed of the pending complaint. Thus, if the TRO is granted for the Plaintiffs alone, then Chamber's Members would be in an impossible position to abide by the Order or risk civil penalties for failure to do so. Given that there is already an ongoing action on this matter, case law, equities and common-sense dictates that affected parties not otherwise represented by the action be allowed to also be so protected by this Court's declaratory and injunctive relief.

28.     Intervention in this matter is necessary and supported by case law.  Intervention would not cause prejudice or delay, and participation of the applicants would assist this Court's resolution of the issues.  For all these reasons, the applicants respectfully request that the Court grant their motion to intervene.

4856-2670-6601.1

Respectfully submitted,

Date:  <u>February 26, 2024</u>

<u>*/s/ Joshua Smeltzer*</u>
Chris Davis
Joshua D. Smeltzer
GRAY REED
1601 Elm St., Suite 4600
Dallas, TX 75201
cdavis@grayreed.com
Tel: (469) 320-6215
Fax: (469) 320-6926
jsmeltzer@grayreed.com
Tel: (469) 320-6225
Fax: (469) 320-6930

Greg White
900 Washington Avenue
Suite 800
Waco, Texas 76701
gwhite@grayreed.com
Tel: (254) 342-3003
Fax: (469) 320-6926

Mark D. Siegmund
State Bar Number 24117055
CHERRY JOHNSON SIEGMUND JAMES
PLLC
The Roosevelt Tower
400 Austin Avenue, 9th Floor
Waco, Texas 76701
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

*Attorneys for Plaintiff-Intervenor*

4856-2670-6601.1

# EXHIBIT A

## **DECLARATION OF CODY CARBONE**

I, Cody Carbone, declare based upon my personal knowledge:

1.      I serve as Chief Policy Officer at the Chamber of Digital Commerce and have been employed by the Chamber since 2022.

2.      As the Chief Policy Officer, I lead the Chamber's policy initiatives and member services, representing a diverse membership of cryptocurrency mining members. These Members face direct impacts from the issue at hand that extend beyond the scope addressed by the Plaintiffs.

3.      Our Members include 18 bitcoin mining companies, constituting over 75% of the market capitalization for bitcoin mining in the United States. As a national trade association, our cryptocurrency mining Members include companies with facilities in Texas and throughout the United States.

4.      Upon conducting a thorough review of our membership and engaging in discussions with our Members, it has become evident that a significant portion of our cryptocurrency mining Members are directly impacted by the EIA's mandate to submit detailed operational data by February 23, 2024. This mandate, as outlined in the EIA's correspondence, places a substantial burden on these Members. Notably, these affected members are distinct from the plaintiffs currently represented in this lawsuit, as they are affiliated with our organization rather than the Texas Blockchain Council. This discrepancy in representation underscores the critical need for our intervention to ensure that the interests of all impacted parties, particularly those within our membership who lack direct representation in the ongoing suit, and adequately addressed and protected.

4856-2670-6601.1

5.      After reviewing our Membership again, I have determined that our Members have operations in Texas that are not already covered by the Texas Blockchain Council.

I Cody Carbone, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 26, 2024                     /s/ *Cody Carbone*

Cody Carbone (NY Bar No. 5539093)
E: Cody@digitalchamber.org
P: (908) 399-8099
Address:
1667 K Street NW, Suite 640
Washington, DC 20006

4856-2670-6601.1